FIN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States *ex rel.* Donald E. Howard, *et al.*, | : | |
| | : | Case No. 1:99-CV-285 |
| Relators, | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | ORDER GRANTING IN PART AND |
| Lockheed Martin Corp., *et al.*, | : | DENYING IN PART MOTION TO |
| | : | DISMISS |
| Defendants . | : | |

This matter comes before the Court on Defendant Lockheed Martin Corporation's Motion to Dismiss Second Amended and Consolidated Complaint (doc. 65) pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6).  Relators Donald E. Howard, Larry W. Wilson, Charles Harrison, and Morris Moss have brought this *qui tam* action under the fraud provisions and the retaliation provision of the False Claims Act, 31 U.S.C. § 3729(a)(1), (2), and (3), and § 3730(h), respectively.  Lockheed moves to dismiss the allegations against it on multiple grounds including the failure to plead fraud with particularity, statute of limitations, and failure to state a claim upon which relief can be provided.  Relators oppose the dismissal motion.  For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** Lockheed's motion.

I.      **BACKGROUND**

A.      **Procedural History**

Relators Donald Howard and Larry Wilson filed the initial Complaint (doc. 3) in this action on behalf of the United States against Lockheed and five subcontractors on April 21,

1

1999. The Complaint was filed under seal. The United States then began an investigation into Relators' allegations for the purpose of determining whether to intervene in the action. On June 11, 2003, Relators filed an Amended Complaint (doc. 25) adding a new subcontractor defendant. Upon motion, the Court partially lifted the seal on the pleadings in this case on August 6, 2003 so Relators could serve a copy of the Complaint and Amended Complaint on Lockheed. (Doc. 27.) On May 13, 2005, Relators Howard and Wilson moved for leave to file a Second Amended Complaint which would combine their allegations into a single lawsuit with the allegations that Relators Charles Harrison and Morris Moss had stated in a concurrent lawsuit in the United States District Court for the Northern District of Georgia. (Doc. 38.) The Court granted leave to amend and the Relators filed their Second Amended Complaint (doc. 40) against Lockheed and eight subcontractors (hereinafter the "Subcontractor Defendants"), including two subcontractors named as defendants in this action for the first time.

On October 5, 2006, the Government filed a Notice to Decline Intervention in this case. (Doc. 61.) On October 12, 2006, pursuant to a motion, the Court ordered that the Second Amended Complaint be unsealed and served on Defendants, along with the Order and the Notice to Decline Intervention. (Doc. 62.) All other documents remained under the seal. (Id.)

Subsequently, on March 13, 2007, Lockheed filed a Motion to Unseal the Entire Record (doc. 66). The Court held *in camera* review of the documents with the Government to determine which documents to maintain under seal. The *in camera* review was held on June 14, 2006. The Court ordered that some documents be removed from under the seal in toto, and approved redactions to be made for other documents before they are unsealed.

Lockheed moves to dismiss under Federal Rules of Civil Procedure 8, 9(b) and 12(b)(6).

Relators have opposed the dismissal motion and the Government has filed a Statement of Interest (doc. 85) regarding the dismissal motion. The Court's decision is not based on any information or argument stated in the Statement of Interest to the extent that such information is not contained within the allegations of the Second Amended Complaint itself. This Court has original jurisdiction over this case under 31 U.S.C. § 3730.

**B.      Overview of the Second Amended Complaint**

A detailed review of the 400+ paragraphs of the Second Amended Complaint is neither practical nor necessary. A brief overview of the allegations will suffice to aid understanding of the legal analysis below. Relators are current and former employees of Lockheed who have worked in Lockheed's Jig and Fixture Department, Tooling Department, and/or in Tool Inspection. Relator Howard has worked for Lockheed for approximately 35 years, Relator Wilson for approximately 25 years, Relator Harrison for approximately 40 years, and Relator Moss for approximately 40 years before his retirement in 2005. (Doc. 40 ¶¶ 6-9.)

Relators allege that Lockheed and the Subcontractor Defendants violated the False Claims Act ("FCA"), 31 U.S.C. § 3729(a), by improperly charging the United States for nonconforming and substandard tooling made by Defendants and used by Lockheed to manufacture and assemble the F-22 Raptor fighter plane and/or the C-130J cargo plane for the United States. Relators allege that Lockheed paid vendors and charged the United States for improperly made tools as though they had been properly made. They also allege that Lockheed charged the United States for the rework, repair, and replacement of improperly made tools. (<u>Id.</u> ¶¶ 1-5.)

Relators admit that they do not have access to, and therefore cannot plead, specific or

3

detailed facts concerning the subcontractors' invoices to Lockheed or concerning the claims for payment submitted by Lockheed to the United States.  Relators allege that such information is in the exclusive possession of one or more Defendants or the United States, and also that Lockheed has destroyed some important documents.  (Id. ¶¶ 24-28, 225-34.)  Relators base certain allegations about the submission of claims "upon information and belief" and state that such allegations are based on their personal knowledge and their approximately 140 combined years of experience working at the Lockheed facility on the F-22 and C-130J programs.  (Id. ¶ 31.)

In Count I of the Second Amended Complaint, Relators allege that Lockheed falsely represented to the United States that it was in full compliance with its contracts, that Lockheed and the Subcontractor Defendants presented or caused to be presented false claims for payment to the United States, that Lockheed and the Subcontractor Defendants made or used false records or statements to get false or fraudulent claims paid and approved by the United States pursuant to contracts with the United States, and that Defendants obtained payments from the United States based on Lockheed's submission of false claims for payment, all in violation of the FCA, 31 U.S.C. § 3729(a)(1) and (2).  (Id. ¶¶ 386-93.)

In Count II, Relators allege that Defendants conspired against the United States to get false or fraudulent claims paid in violation of the FCA, 31 U.S.C. § 3729(a)(3).  (Id. ¶¶ 394-97.)

In Count III, Relators allege that Lockheed retaliated against Relator Howard in violation of the FCA, 31 U.S.C. § 3730(h), because he questioned and complained about Lockheed's improper billing to the United States.  (Id. ¶¶ 398-405.)

In Count IV, Relators allege that Lockheed retaliated against Relator Wilson in violation of the FCA, 31 U.S.C. § 3730(h), because he questioned and complained about Lockheed's

improper billing to the United States. (Id. ¶¶ 406-13.)

### III. ANALYSIS

#### A. Fraud and Conspiracy Allegations

The FCA fraud and conspiracy provisions provide in part that any person who:

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;

(3) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid;

. . . is liable to the United States Government for a civil penalty . . . .

See 31 U.S.C. § 3729(a).

Lockheed moves to dismiss the fraud allegations contained in Counts I and II on the basis that Relators failed to plead the allegations with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure. Lockheed moves to dismiss the conspiracy allegations contained in Count II on the basis that they cannot stand alone if the underlying fraud allegations are dismissed. The Court will begin its analysis with the fraud allegations. The crux of Lockheed's argument is that Relators have failed to plead with particularity that Lockheed presented any specific false claim to the United States for payment or received payment by the United States based on any false statement. Lockheed does not seriously dispute that Relators have pleaded with particularity the fraudulent schemes employed by Lockheed and the Subcontractor Defendants in regards to the tooling program. Lockheed's argument is that Relators have not tied the schemes directly to specific claims for payment or even to specific

contracts alleged to have been violated. That is, Lockheed contends that Relators have not identified a specific false claim nor alleged why it was false, who submitted it for payment, or when it was submitted for payment. In response, Relators contend that they have pleaded their allegations of fraud with sufficient particularity to satisfy Rule 9(b), and they argue that they are not required under the FCA to plead the actual presentment of claims with particularity based on a recent Sixth Circuit precedent.

Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). "[L]ack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n.5 (4th Cir. 1999); see also Michigan ex rel. Kelley v. McDonald Dairy Co., 905 F. Supp. 447, 450 (W.D. Mich. 1995). When acting upon a motion to dismiss filed under Rule 9(b), "a district court must accept as true the plaintiff's well-pleaded facts and draw all inferences in favor of the complaint." Sanderson v. HCA-The Healthcare Co., 447 F.3d 873, 876 (6th Cir.) cert. denied 127 S.Ct. 303 (2006). "Rule 9(b)'s particularity requirement does not mute the general principles set out in Rule 8; rather, the two rules must be read in harmony." Id. (quoting Michaels Bldg. Co. v. Ameritrust Co., N.A., 848 F.2d 674, 679 (6th Cir. 1988)).

The Sixth Circuit repeatedly has "held that a complaint alleging violations of the False Claims Act must allege the circumstances surrounding the fraud with particularity as required by Rule 9(b)." Walburn v. Lockheed Martin Corp., 431 F.3d 966, 972 (6th Cir. 2005); see also, e.g. Sanderson, 447 F.3d at 876-77. The plaintiff must specify the "who, what, when, where, and

6

how of the alleged fraud." Sanderson, 447 F.3d at 877 (internal quotation and citation omitted). The complaint "should provide fair notice to Defendants and enable them to prepare an informed pleading responsive to the specific allegations of fraud." United States ex rel. Bledsoe v. Community Health Systems, Inc., 342 F.3d 634, 643 (6th Cir. 2003) (internal quotation and citation omitted). "The failure to identify specific parties, contracts, or fraudulent acts requires dismissal." Yuhasz v. Brush Wellman, Inc., 341 F.3d 559, 564 (6th Cir. 2003).

In a recent seminal decision, the Sixth Circuit sought to differentiate between the three fraud provisions stated in § 3729(a) of the FCA and instructed that there were different elements of proof for each. United States ex rel. Sanders v. Allison Engine Co., Inc., 471 F.3d 610 (2006). In Allison Engine, the district court had granted the defendants judgment as a matter of law after the presentation of the relators' case-in-chief over the course of a five-week trial. Id. at 613-14. The relators had presented evidence that subcontractors had submitted invoices to each other and to the general contractor, and that all the money used to pay the contracts and subcontracts had come from the government. Id. at 613. However, the relators had failed to present evidence that "the subcontractors or [contractors] ever presented any false or fraudulent claim directly to the United States or the Navy for payment." Id. The district court held that this was a fatal flaw and warranted dismissal because "the FCA required a showing that a false or fraudulent claim was *presented to the government*, either by the defendants or by the prime contractor." Id. at 614 (emphasis in the original). On appeal, the Sixth Circuit reversed the decision of the district court in part, holding that there was no presentment requirement in either § 3729(a)(2) or (3). Id. at 614, 622. The implications for a Rule 9(b) dismissal motion are obvious. Relators can only be required to plead in their complaints such elements of a cause of action that are necessary to

withstand a directed verdict motion.

> The Sixth Circuit stated its holding in <u>Allison Engine</u> with forceful directness:
>
> We hold that while liability under § 3729(a)(1) turns on whether a claim has been presented to the government, subsections (a)(2) and (a)(3) do not require such a showing. Rather, a relator under these two subsections must show that government money was used to pay the false or fraudulent claim. This requirement comports with the policy rationale behind the FCA-protecting the government fisc-while ensuring that the statute applies only to claims submitted to the government and not to private entities.

<u>Id.</u> at 622. The holding was based, in part, on the plain language of the statute. Only subsection (a)(1) of § 3729 discusses "present[ment] . . . of a false or fraudulent claim for payment or approval." <u>Id.</u> at 614-15. Subsection (a)(2), on the other hand, requires the "mak[ing]" or "use" of "a false record or statement" and it requires actual payment or approval by the government. <u>Id.</u> at 615, 617-18. Subsection (a)(3) covers yet a third area, conspiracy to defraud. <u>Id.</u> at 618.

Lockheed reads <u>Allison Engine</u> narrowly. Lockheed concedes that while only § 3729(a)(1) requires presentment to the government, § 3729(a)(2) and (3) still require presentment to parties "other than the government so long as the claim will be paid with government funds." <u>Id.</u> at 615. That is, Lockheed reads <u>Allison Engine</u> to clarify that moneys paid to subcontractors for false claims submitted to other subcontractors or the prime contractor, but not to the government directly, are covered by the FCA in § 3729(a)(2) and (3) so long as the payment is made with government funds. The section quoted by Lockheed is dicta contained in the discussion of the legislative history of the FCA. Still, the argument has appeal as it is consistent with past Sixth Circuit interpretation of the FCA, <u>see</u> discussion <u>supra</u>, and several passages in <u>Allison Engine</u> address the submission of claims to *someone* that are paid with government funds. <u>See</u> 471 U.S. at 615; <u>id.</u> at 617 n.4 ("Subsection (a)(2) . . . punishes the

8

transmission of false statements or records in order to obtain government payment."); id. at 618 ("[T]he FCA covers all claims to government money, even if the claimant does not have a direct connection to the government.").

Nonetheless, the Court cannot agree that Allison Engine is to be read so narrowly. The holding of Allison Engine is explicit. Subsections (a)(2) and (a)(3) "do not require a such a showing" that "a claim has been presented to the government." Id. at 622. Rather, the concern that Lockheed raises–that there must have been the presentment of a claim to *someone* if not directly to the government–is merely a matter of practical proof and not an element of the cause of action. The Sixth Circuit explained:

> Moreover, claims under subsections (a)(2) and (a)(3) which involve requests for payment by prime contractors rather than subcontractors may perhaps be more easily proved by showing presentment of a false claim to the government. Thus, evidence of presentment may have practical importance in claims under subsections (a)(2) and (a)(3). Our ruling here determines only that presentment evidence is not required for subsection (a)(2) and (a)(3) claims as a matter of law.

Id.

The Court anticipates that Lockheed would argue that the Court's interpretation of Allison Engine is inconsistent with the earlier Sixth Circuit precedent. In Yuhasz v. Brush Wellman, Inc., similar to this case and to Allison Engine, the relators conceded that they were "unable to identify a specific claim submitted directly to the United States by a prime contractor." 341 F.3d at 564. The Sixth Circuit upheld the dismissal of the relators' complaint for lack of particularity. Id. at 566. However, the Sixth Circuit instructed in Allison Engine that Allison Engine and Yuhasz were consistent with each other and that Yuhasz "did not read a presentment requirement into the FCA." Allison Engine, 471 F.3d at 620. Rather, the Yuhasz complaint was struck down because it did "not identify any specific fraudulent parties or

9

fraudulent acts that violated the FCA." Id. As the Yuhasz court stated: "[T]he complaint contains no particularized allegations of wrongdoing. The failure to identify specific parties, contracts, or fraudulent acts requires dismissal." 341 F.3d at 564.

The holding in Allison Engine also must be reconciled with the holding in Sanderson v. HCA-The Healthcare Company. The complaint in Sanderson "did not refer to a specific fraudulent cost report or other claim filed with the government, nor did it detail who had filed such a claim or when it had been filed." 447 F.3d at 875. The Sixth Circuit stated that the "fraudulent claim is the *sine qua non* of a False Claims Act violation." Id. at 878 (internal quotation and citation omitted). The court upheld dismissal of the case for failing to identify a specific false claim submitted to the government. Id. at 879. The Sanderson court did not, however, differentiate between the different provisions of § 3729(a), and the case is distinguishable from Allison Engine in that respect.

The case at bar is factually different from Sanderson and Yuhasz, which were dismissed, but similar to Allison Engine in important ways. In Sanderson, the Sixth Circuit stated that it was not sufficient for purposes of Rule 9(b) to describe a potentially fraudulent scheme in detail, but then simply allege that claims requesting illegal payments "must have been submitted . . . or should have been submitted." 447 F.3d at 877. The fraudulent scheme in Sanderson involved complicated debt allocation among various hospitals in a hospital chain for which reimbursement was sought under the Medicare, Medicaid, and Civilian Health and Medical Program of the Uniformed Services (CHAMPUS) programs. Id. at 875. The relators in Sanderson stated that claims were made based on "information and belief," but the relators did not set forth the factual basis for the belief. Id. at 878. Rather, the Sanderson relators supported the complaint with only

10

"speculation and unsupported conclusion." Id. Similarly, in Yuhasz, the relators did not identify any "parties, contracts, or fraudulent acts." 341 F.3d at 564.

Here, Relators state specifically that their allegations made upon "information and belief" are based on their more than 140 combined years of experience as Lockheed employees. (Doc. 40 ¶ 31.) Moreover, the Second Amended Complaint is replete with specific and detailed information about the alleged fraud. The facts do not involve health care fraud and a complicated scheme of debt allocation among multiple hospitals as was the true in Sanderson. Instead, in this defense contractor case, Relators identify the specific contract numbers for the contracts between Lockheed and the United States to develop the F-22 aircraft and describe the cost-plus nature of the contracts by which Lockheed was to invoice the United States for the cost of making a new tool. (Id. ¶¶ 34-39.) Relators provide numerous examples of specific tools, identifying the tools by tool number or tool order serial number, for which the United States was improperly charged or overcharged and explain the basis for concluding the billing was improper. (See, e.g., id. ¶¶ 115, 179, 257, 270-89, 297, 306, 362, 375.) Relators allege the dollar amount overcharged for multiple tools or groups of tools. (See, e.g., id. ¶¶ 109, 270, 277-86.) Relators identify management level employees and tool engineers at Lockheed who were aware of or participated in the fraudulent schemes alleged. (See, e.g., id. ¶¶ 98, 100, 136, 138, 140, 158, 170, 200, 309, 380-85.) Relators identify specific difficulties particular to this case that hindered their ability to identify specific false claims submitted including (1) the fact that tool numbers and tool order serial numbers are not referenced in the claims process, (id. ¶ 265); (2) that tool invoices reflecting nonconforming tools produced by outside vendors were destroyed, (id. ¶¶ 225-42); and (3) that Lockheed failed to implement an accounting system it

11

had asserted in a letter agreement would provide actual cost data for reworks and repairs, (id. ¶ 63). Based on the volume and quality of the specific facts pleaded in the Second Amended Complaint, the Court concludes that Relators' generalized allegations that Lockheed charged the United States for payment and the United States paid claims, (see, e.g., id. ¶¶ 3-5, 27-29, 97, 127, 389), cannot be said to be mere "speculation or unsupported conclusion."

The Second Amended Complaint is not a model of clarity. Some portions of the Second Amended Complaint are pleaded with a significantly greater level of particularity and precision than other portions. Nonetheless, Sixth Circuit precedent can no longer be read to require FCA relators to plead with particularity the actual presentment of false claims to the United States for purposes of 31 U.S.C. § 3729(a)(2) and (3). Counts I and II of the Second Amended Complaint are pleaded with sufficient particularity to satisfy Fed. R. Civ. P. 9(b) to the extent they are based on subsections (a)(2) and (3) and they will not be dismissed to that extent. Counts I and II clearly apprise Lockheed of the nature of the allegations against it such that it should be able to provide an informed responsive pleading. Bledsoe, 342 F.3d at 643; see also United States, California, Florida ex rel. Fry v. Guidant, No. 3:03-0842, 2006 WL 2633740, *7 (M.D. Tenn. Sept. 13, 2006) (finding similarly detailed allegations sufficient to satisfy Rule 9(b)). On the other hand, Counts I and II are dismissed to the extent they are based solely on 31 U.S.C. § 3729(a)(1) because Relators did not plead presentment to the United States with particularity. The Court will entertain a motion for leave to amend the Second Amended Complaint if warranted after discovery.

Lockheed also moves to dismiss Count II on separate, but related grounds. To begin, Lockheed's argument that the conspiracy claim fails as a matter of law because the underlying

fraud claims are not pleaded with particularity is not well-founded. The Court has rejected the predicate that the underlying claims were not pleaded with particularity. Moreover, the Court disagrees with Lockheed's contention that the conspiracy claim otherwise is not adequately pleaded. Just prior to the Allison Engine decision, a court in this district held that the following elements were required to prove an FCA conspiracy claim: (1) there was a single plan to get a false claim paid, (2) the alleged coconspirators shared in the general conspiratorial objective to get a false claim paid, and (3) one or more conspirators performed an overt act in furtherance of the conspiracy to get a false claim paid. United States ex rel. Judd v. Maloy, No. 3:03-cv-241, 2006 WL 2583318, *9 (S.D. Ohio Sept. 6, 2006) (citing United States v. Murphy, 937 F.2d 1032, 1038-39 (6th Cir. 1991)). The Court finds that Relators adequately have pleaded, by inference if not directly, all the necessary elements of an FCA conspiracy. The Court will not dismiss Count II on this basis.

**B.      Statute of Limitations**

Lockheed also asserts that a six-year statute of limitations applies to the Relators' claims and that Counts I and II are barred to the extent they are based on actions or events occurring prior to April 21, 1993. The FCA statute of limitations provides as follows:

> A civil action under section 3730 may not be brought –
>
> 1) more than 6 years after the date on which the violation of section 3729 is committed, or
>
> (2) more than 3 years after the date when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with responsibility to act in the circumstances, but in no event more than 10 years after the date on which the violation is committed,
>
> whichever occurs last.

31 U.S.C. § 3731(b).

The language of the statute is awkward at best and, not surprisingly, there is split of authority regarding the correct interpretation of § 3731(b). In one line of cases, several courts, including one district court within the Sixth Circuit, have held that § 3731(b)(2) applies only to *qui tam* cases wherein the United States has elected to intervene because that provision refers to facts known "by the official of the United States charged with responsibility to act." These courts hold that the six-year limitations period stated in § 3731(b)(1) applies in all actions brought by *qui tam* relators in which the United States has not intervened. See, e.g., United States ex rel. SNAPP v. Ford Motor Co., No. 06-11848, 2006 WL 2583257, *3-5 (E.D. Mich. Sept. 7, 2006); United States ex rel. El Amin v. George Washington Univ., 26 F. Supp.2d 162, 172-73 (D.D.C. 1998); United States ex rel. Thistlethwaite v. Dowty Woodville Polymer, Ltd., 6 F. Supp.2d 263, 265 (S.D.N.Y. 1998). The Sixth Circuit implicitly adopted this approach in dicta in the Sanderson case. 447 F.3d at 876, 879.

The Ninth Circuit Court of Appeals reached a different conclusion. It held that both clauses of § 3731(b) apply to cases brought by either *qui tam* relators or the government, and that the three-year tolling provision of subsection (b)(2) is measured by the knowledge of the plaintiff. United States ex rel. Hyatt v. Northrop Corp., 91 F.3d 1211, 1216 (9th Cir. 1996). The Third Circuit adopted this approach in an unpublished decision. United States ex rel. Malloy v. Telephonics Corp., 68 Fed. Appx. 270, 273 (3rd Cir. 2003).

A third line of cases holds that both clauses of § 3731(b) apply to cases brought by *qui tam* relators regardless of whether the government intervenes, but that three-year provision of subsection (b)(2) is measured by the government's knowledge in all cases. See, e.g., United

14

States ex rel. Pogue v. Diabetes Treatment Centers of Am., 474 F. Supp.2d 75, 85, 89 (D.D.C. 2007); United States ex rel. Salmeron v. Enterprise Recovery Sys, 464 F. Supp.2d 766, 769 (N.D. Ill. 2006). The Pogue court stated its understanding that the statute is interpreted in the following manner regardless of whether the United States intervenes: "(1) six years from the date of the violation; or (2) three years from the from the date when facts material to the right of action are or should be known to the relevant government official, whichever occurs last; but (3) in no event more than ten years after the violation is committed." Pogue, 474 F. Supp.2d at 89.

The Court has carefully considered the statutory language and the case law. The limitations statute defies easy interpretation. Given the dicta language in Sanderson, however, this Court is inclined to hold that the six-year statute of limitations applies to cases like the present one brought by relators and without government intervention. The statutory language supports this approach because § 3731(b)(2) by its terms applies only to "the official of the United States charged with responsibility to act," and not to relators. Thus, the Court will apply a six-year limitations period. Relators filed the initial Complaint in this action on April 21, 1999. The Second Amended Complaint must be dismissed to the extent it is based on allegations of wrongdoing which occurred prior to April 21, 1993.[1]

**C.      Retaliation Claims**

Relators Howard and Wilson also have pleaded retaliation claims. The FCA creates a cause of action for retaliatory employment discrimination. The statute states in relevant part as

---

[1] Given the wide-range of diverging interpretations of the limitations statute across the federal courts and the fact that the Sixth Circuit has not ruled directly on this issue, the Court would suggest that parties agree to at least limited discovery of relevant events occurring the four years prior to April 21, 1993.

follows:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer *because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section*, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C. § 3730(h) (emphasis added).

Lockheed moves to dismiss Counts III and IV pursuant to Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Fed. R. Civ. P. 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." In reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court "must read all well-pleaded allegations of the complaint as true." Weiner v. Klais and Co., Inc., 108 F.3d 86, 88 (6th Cir. 1997). In addition, a court must construe all allegations in the light most favorable to the plaintiff. Bower v. Federal Express Corp., 96 F.3d 200, 203 (6th Cir. 2003).

To withstand the dismissal motion, the complaint "does not need detailed factual allegations," but it must contain "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, – U.S.–, 127 S.Ct. 1955, 1964-65 (2007). The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."

16

Weiner, 108 F.3d at 88. "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965. Courts do not require "heightened fact pleading of specifics, but only enough to state a claim for relief that is plausible on its face." Id. at 1974.[2] "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969.

In order to establish their claim for retaliatory discharge under the FCA, Relators must show as to Relator Howard in Count III and Relator Wilson in Count IV that:

> (1) he engaged in a protected activity; (2) his employer knew that he engaged in the protected activity; and (3) his employer discharged or otherwise discriminated against the employee as a result of the protected activity.

Yuhasz, 341 F.3d at 566. Relators must plead facts "which would demonstrate that defendants had been put on notice that plaintiff was either taking action in furtherance of a private *qui tam* action or assisting in an FCA action brought by the government." Id. (quoting United States ex. rel. Ramseyer v. Century Healthcare Corp., 90 F.3d 1514, 1522 (10th Cir. 1996)).[3]

The protected activity in the first prong must relate to "exposing fraud" or "involvement with a false claims disclosure." McKenzie v. BellSouth Tele., Inc., 219 F.3d 508, 516 (6th Cir. 2000). If the protected activity is internal reporting, the reports must allege fraud on the

---

[2] The Twombly Court made it plain that the following language from Conley v. Gibson, 355 U.S. 41 (1957), is no longer to be used when evaluating whether a complaint can withstand a dismissal motion: "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that which would entitle him to relief." Twombly, 127 S.Ct. at 1968 (quoting Conley, 355 U.S. at 45-46).

[3] The court found the retaliation allegations to be insufficient in Yuhasz because the relator, the supervisor of laboratory testing, was acting within the scope of his employment duties when he warned his employer that its conduct violated the FCA and his warnings did not put the employer on notice that the relator was intending to pursue an FCA action. Id. at 567-68.

17

government.  Id.  It is not enough to assert mere regulatory violations.  Id. at 516-18.  "Although internal reporting of suspected fraud or false claims can form the basis of 'protected activity' under the [FCA], the internal reporting of wrongdoing . . . must establish some nexus to the FCA to satisfy the 'in furtherance of' prong of an FCA claim, by reasonably leading to a viable FCA action."  Id. at 517.  As to the second prong, "[a]n employee must supply sufficient facts from which a reasonable jury could conclude that the employee was discharged because of activities which gave the employer reason to believe that the employee was contemplating a *qui tam* action against it."  Id. (citation omitted).

The Second Amended Complaint adequately sets forth claims for retaliation in Counts III and IV when the allegations are construed in a light most favorable to Relators.  Bower, 96 F.3d at 203 (dismissal standard).  Relators allege that Relators Howard and Wilson made complaints that, by inference, amounted to internal reporting.  (Doc. 40 ¶¶ 399-400, 407-08.)  They did not complain simply about regulatory violations or general fraudulent practices, but rather about "improper billing on Government contracts" and "improper billing to the Government."  (Id.)  This focus on Government billing and Relators' allegations that Lockheed took acts against it "because of" their complaints, (id. ¶¶ 402, 410), are sufficient to support an inference that Lockheed knew that Relators were contemplating an FCA action.  The Court will not dismiss Count III or Count IV of the Complaint.

**IV.     CONCLUSION**

For the foregoing reasons, the Motion to Dismiss (doc. 65) is **GRANTED IN PART AND DENIED IN PART**.  The Court dismisses Count I to the extent it is based on 31 U.S.C. § 3731(a)(1) for failure to plead presentment of a false claim to the United States with particularity.  Count I is not dismissed to the extent it is based on 31 U.S.C. § 3731(a)(2). Counts II, III, and IV are not dismissed.

IT IS SO ORDERED.


   ___s/Susan J. Dlott_____
Susan J. Dlott
United States District Judge