IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel. Donald Howard, *et al.*, | : | Case No. 1:99-CV-285 |
| | : | Chief Judge Susan J. Dlott |
| Relators, | : | ORDER GRANTING MOTION TO FILE SUR-REPLY AND GRANTING IN PART AND DENYING IN PART MOTION TO COMPEL |
| v. | : | |
| Lockheed Martin Corporation, *et al.*, | : | |
| Defendants. | : | |

This matter comes before the Court on (1) Relators' Motion to Compel Complete and Substantive Responses to Relator Don Howard's Interrogatory Nos. 1, 14, 19, 22, 26, and 28 and a Continuation of the 30(b)(6) deposition of Lockheed as to Paragraphs 2(D), 2(E), and 2(F) of the Relators' Original 30(b)(6) Notice ("Motion to Compel") (doc. 209) and (2) Defendant Lockheed Martin Corporation's Motion for Leave to File a Brief Sur-Reply in Opposition to the Motion to Compel (doc. 233). Relators seek in the underlying discovery requests, generally stated, information and processes necessary to trace specific F-22 tooling costs to specific vouchers submitted by Lockheed to the Government for payment. For the reasons that follow, the Court will **GRANT** the Motion for Leave to File Sur-Reply and **GRANT IN PART AND DENY IN PART** the Motion to Compel.

I.  **PROCEDURAL POSTURE AND MOTION FOR LEAVE TO FILE SUR-REPLY**

The parties have been disputing the tool-tracing method expounded by Lockheed in response to Relators' discovery requests for approximately four years. The parties and the Court have expended significant time and effort to resolve the dispute, in an exchange of correspondence between the parties, at out-of-court and in-court tool-tracing demonstrations, at

1

status conferences conducted by the Court, and now in lengthy briefing. In fact, since the Court held a tool-tracing demonstration hearing on January 28, 2011, Relators have filed four substantive briefs (docs. 209, 223, 231, 236) and Lockheed has filed three substantive briefs (docs. 226, 233, 237) on the pending Motion to Compel. The parties have supported their arguments with hundreds of pages of exhibits, including expert reports, depositions, and court hearing transcripts.

### A. Motion for Leave to File Sur-Reply

Discovery related to the tool-tracing dispute continued after the initial briefs on the Motion to Compel were filed. Relators requested a new item of relief in their Reply brief based on the on-going discovery. (Doc. 231 at 19.) Lockheed, thereafter, filed its Motion for Leave to File Sur-Reply. Lockheed attached its proposed Sur-Reply to the Motion for Leave. (Doc. 233-1.) Given the complexity of the issues presented and the new matters raised in the Relators' Reply brief, the Court grants the Motion to File Sur-Reply.

Administratively, the Court deems to Sur-Reply to have been filed for purposes of docketing.[1]

### B. Disputed Rule 30(b)(6) Deposition Topics

Relators served the Notice of Deposition of Lockheed Martin Corporation pursuant to Rule 30(b)(6) ("Rule 30(b)(6) Notice") on November 16, 2007. (Doc. 194-1.) The following

---

[1] In their Memorandum in Opposition to Lockheed's Motion to File Sur-Reply, Relators make substantive arguments that respond not only to the Motion to File a Sur-Reply, but to the merits of the Sur-Reply itself. (Doc. 236.) Relators, nonetheless, intimate that they would seek leave to file a second responsive brief to the proposed Sur-Reply if the Court gave Lockheed leave to file it. (*Id.* at 5 n.1.) The Court finds that additional briefing will not further elucidate this dispute. Leave for further briefing will not be granted.

deposition topics are disputed:

> 2(d). The nature and operation of all billing systems, electronic or otherwise, by which Lockheed charged the United States for any or all F-22 tools and/or tooling-related charges.
>
> 2(e). The nature, status, and location of all physical or electronic documentation which was, or which could have been, generated in connection with the operation of any system within the purview of subsection d, including without limitation records of items billed for; credits; deductions; refunds; and/or adjustments.
>
> 2(f). Any and all methodologies by which Lockheed is able to demonstrate what amount was, or what amounts were, billed to the United States for items within the scope of subsection d, including without limitation reference to recapitulations; ledgers; backups; or other files.

(*Id.*)

Relators took the deposition of Richard "Rick" Elliott on February 5, 2008. (Doc. 209-3.) Elliott, an accounting employee at Lockheed, was produced by Lockheed specifically to respond to the disputed topics 2(d), 2(e), and 2(f) of the Rule 30(b)(6) Notice. (*Id.* at 3.) Lockheed asserts that Relators also took a Rule 30(b)(6) deposition of Sheila Tapley on November 6, 2008. (1/28/2011 Tr., Doc. 188 at 9.)

**C.     The Disputed Interrogatories**

Relators served the relevant Interrogatories on Lockheed on March 18, 2008. Lockheed served its Supplemental [Verified] Responses to the Interrogatories on September 17, 2008. (Doc. 209-4.) The relevant disputed Interrogatories are as follows:

> 1.     **For every F-22 tool**, **identify the tool number**, **the corresponding contract number, any corresponding voucher or other claim to the United States government for payment and for each claim, identify the corresponding billable cost number, the corresponding work order, the corresponding TOS number or identification of the work authorizing document, the corresponding purchase order(s) issued to one or more subcontractors, the corresponding invoice, and the corresponding VIC number in a manner that clearly ties all of the above information together**

3

**and identify any corresponding documents** (e.g., TOS, work order, PO, invoice, etc.) by Bates number (or otherwise if not produced).

14. Identify with specificity the **"appropriate amount[s]"** that You contend (in Paragraph 306 of Your Answer) **You billed the United States in connection with the tools** set forth in the chart in Paragraph 306 of the Complaint, and describe in detail the calculation(s) You made to arrive at those alleged "appropriate amount[s]".

19. In Paragraph 89 of your Answer you admitted "**that on occasion Lockheed Martin employees would perform work on tools originally built by a tool vendor, that on occasion Lockheed Martin would send tools originally built by one tool vendor to another tool vendor to do work on the tool, and that on occasion Lockheed Martin returned tools to the tool vendor which built the tool for work to be done on the tool.**" For every such "occasion" referenced in this admission, state all facts and identify all documents, communications and persons with knowledge that in any way refer or relate to any such "occasion" including, but not limited to, identifying the tool, whether it was worked on by employees, another vendor, and/or sent back to the original vendor, the work done, **the claim made to the government for the work (including the voucher, the date and the amount)**, any charge back to the original vendor, the reason for the work, the portion of the contract and/or other authorizing document that justified billing for the work and any documents by Bates number (or otherwise if not produced) that pertain to each occasion.

22. State all facts and identify all documents, communications and persons with knowledge that in any way refer or relate **to tools that were altered or re-identified** including, but not limited to, the identity of the original tool, the identity of any corresponding altered or reidentified tool, the reason for the alter or re- identification, the identity of the claim to the government for the original tool (including voucher number, amount billed, and date), **the identity of the claim to the government for the corresponding altered or re-identified tool (including voucher number, amount billed, and date)**, the date and amount of any credit to the government for that tool, and all related documents by Bates number (or otherwise if not produced).

26. State all facts and identify all documents, communications and person with knowledge that in any way refer or relate **to the closing of tool order serials for accountability only** as is referenced in Paragraphs 211-213 of the Complaint and Paragraphs 211-213 of Your Answer, including, but not limited to, the identity of each tool closed for accountability only, the reason the tool was closed for accountability only, the identity of the manufacturer of the tool, the date of manufacture of the tool, the date(s) and nature of disposition of the tool, the identity of the claim to the government for the tool (including voucher number,

> amount billed, and date), the identity of any credit received for the tool, the date and amount of any credit to the government for that tool, any subsequent problems with the tool (or with parts related to the tool) and all related documents by Bates number (or otherwise if not produced).
>
> 28. Identify with specificity **all costs associated with F-22 tools that You paid to a tooling subcontractor or other third party or that You incurred in-house but for which You did not submit claims** to the United States.

(*Id.* at 4, 21, 27, 33, 40, 44 (emphasis added).) Lockheed responded to the Interrogatories with a combination of narrative answers, the production of documents, and citations to the Elliott deposition transcript.

### D. Remedies Sought By Relators if Motion to Compel is Granted

Relators request several alternative forms of relief if the Court grants the Motion to Compel:

> 1. Order Lockheed to provide full and complete responses to the Interrogatories and to continue the original Rule 30(b)(6) deposition as to topics 2(d), 2(e), and 2(f).
>
> 2. Allow Relators to use Lockheed's "203" and "PARS-2" property control computer systems to calculate damages, bar Lockheed from contesting the accuracy of the costs data from the 203 and PARS-2 systems, and bar Lockheed from asserting that the 203 and PAR-2 costs were not submitted to the Government for payment or were not paid by the Government.
>
> 3. Find that Relators do not need to identify the specific public voucher on which Lockheed submitted costs for payment to the United States to recover on their claims and to trigger the per claim penalty set forth in 31 U.S.C. § 3729.
>
> 4. Find that Relators do not need to identify or segregate out specific tool rework costs from other tool costs in order to recover on their claims because Lockheed did not segregate such costs.

(Doc. 223 at 5–6; Doc. 231 at 19.)

## II. ANALYSIS OF MOTION TO COMPEL

### A. Relators Contend that Lockheed's Production of Business Records Pursuant to Fed.

**R. Civ. P. 33(d) Was Improper.**

Relators assert that Lockheed inappropriately relied on a Federal Rule of Civil Procedure Rule 33(d) document production in lieu providing complete narrative responses to the disputed Interrogatories.  The Court disagrees.  Rule 33 provides in relevant part:

> (d) Option to Produce Business Records.  If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:
>
> (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and
>
> (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).

To begin, Relators' attorney conceded at the tool-tracing hearing that use of the Rule 33(d) responses was appropriate so long as the tool-tracing process which accompanied the documents worked to trace tooling costs to a claim for payment.  (1/28/2011 Tr., Doc. 188 at 67.)  Also, Lockheed did not provide Relators with a mere "document dump."  Lockheed identified particular categories of documents sought by Relators by Bates-number ranges.  (Doc. 209-4 at 4–8, 21–22, 27–30, 33–35, 40–42, 44–45.)  It provided narrative responses explaining how to conduct the tool-tracing process and cited the deposition of their Rule 30(b)(6) deponent, Rick Elliott, for further explanation of the process of tracing tooling costs.  (*Id.* at 5.)  After submitting the written responses, Lockheed demonstrated the tool-tracing process to Relators on December 16, 2008, responded in writing to Relators' follow-up inquiries, and demonstrated the tool-tracing demonstration before the Court on January 28, 2011.  (Doc. 234 at 2; Docs. 209-5,

209-9, 209-11, 209-14, and 209-18.)

Importantly, Lockheed (through its attorneys) repeatedly represented to Relators and to the Court that Lockheed has "has produced all relevant systems to Relators, and there is no 'magic' system that integrates all of the requested information together in one location." (Doc. 226 at 3.) For example, Lockheed's counsel stated at a December 9, 2010 court conference that Lockheed did not have a system in place for "tracking an invoice from a vendor up through a voucher." (12/9/2010 Tr., Doc. 183 at 9.) Also, Lockheed's counsel stated at beginning of the tool-tracing hearing held by the Court as follows:

> [W]e want to emphasize . . . that this brand of tool tracing that you're going to see requires an analysis of Lockheed Martin's billing system . . . in a way that was never contemplated by the government. The Defense Contract Audit Agency ["DCAA"] did not require Lockheed to keep a system to track what we're showing to the Court today . . . DCA audited the systems at Lockheed Martin and found that they've maintained an adequate billing system. So in terms of whether or not Lockheed Martin was required to maintain a system that would track literally the invoice all the way to the voucher on tooling, they did not, and no such system ever existed.

(1/28/2011 Tr., Doc. 188 at 10–11.) Later at that same hearing, Lockheed's counsel reiterated that "there wasn't a process in place that literally traced from invoice . . . all the way to a voucher in a one – in a linear manner." (*Id.*, Doc. 188 at 57.)

After the tool-tracing hearing, Lockheed's counsel stated in correspondence that the "Elliott Method" for tracing tools "is a lawyer-created method of using existing systems to obtain information that responds to the litigation-specific discovery requests" and that "we do not have specific systems that provide the information [Relators] seek in the form that [Relators] seek it because the Government did not require such systems." (Doc. 209-18.) Lockheed's counsel clarified at a subsequent conference that the system arose from Elliott's Rule 30(b)(6)

7

deposition testimony and was created for the litigation. (8/8/2011 Tr., Doc. 225 at 127.) Similarly, Lockheed's counsel stated that "[w]hat [DCAA] required [Lockheed] to do was to simply amass the cost and pass the costs along, not to be able to trace these things one to one." (*Id.*, Doc. 225 at 121.) He affirmed that he was "not playing games with words" because he knew "what the penalty would be" for misleading the Court. (*Id.*, Doc. 225 at 125.) He concluded as follows:

> I'm telling you that there's no system like they want. There are systems that DCAA, the government, has approved, but they are not the systems that trace what he wants to trace. And so in an attempt to help him do that, in response to his 30(b)(6) notice, we gave them the various pieces of that so that he could do it. We can't do anything more than that. We have no separate system that is out there that we can push this button . . . and turn up this information.

(*Id.*)

Relators have not rebutted these representations by Lockheed. On the basis of the information now before the Court, the Court cannot conclude that Lockheed and its Rule 30(b)(6) deponents failed to disclose responsive documents, procedures, or systems. The Court cannot grant the Motion to Compel in these circumstances on the grounds that Lockheed's Rule 33(d) response was wholly inadequate.

However, Relators also assert that Lockheed failed to produce or identify certain discrete responsive documents. For example, Relators assert that Lockheed has not identified the location of Final Tool Price Approvals ("FTPAs"). (Doc. 231 at 8.) The Court grants the Motion to Compel to the limited extent that Lockheed must identify and/or produce the relevant FTPAs by Bates-number. Relators also state that Lockheed has not identified invoices related to at least three purchase orders: RN65191, RL98197, and a purchase order which Relators mistakenly identified as RN8020. (*Id.*; Doc. 209-10 at 3–4; Doc. 209-11 at 3.) After Relators

provide Lockheed with the correct purchase order number, the Motion to Compel also is granted to the limited extent that Lockheed must identify and/or produce by Bates-number the invoices associated with the three purchase orders.

**B.     Relators Contend that the Discovery Responses are Incomplete Because Government Regulations Required Lockheed to Maintain More Specific Records for Tracing Tooling Costs.**

Relators also argue that Lockheed legally was required to maintain a system that would trace costs from a voucher submitted to the Government for payment back to a work authorizing document. (Doc. 223 at 2.) Relators rely on the report and rebuttal report of their purported expert, Clarence Edward Brooks, Jr., a former DCAA auditor, and on Government regulations to support their argument. Federal Acquisition Regulation ("FAR") 31.201-2 required Lockheed to maintain records "adequate to demonstrate that the costs claimed to have been incurred, are allowable to the contract, and comply with applicable cost principles." 48 C.F.R. § 31.201-2 (1996).[2] FAR 52:215-2 required Lockheed to maintain books and records for review and audit "sufficient to reflect properly all costs claimed to have been incurred or anticipated to be incurred in performing" a contract. 48 C.F.R. § 52:215-2 (1989).[3]

Brooks stated in his Report that DCAA "audits require the auditor to trace selected costs from the initiation of a transaction into the various accounting subsystems and from the subsystems into the cost accounting system . . . [and then] into the billing system to support the claim for payment." (Brooks Report, Doc. 210-2 at 5.) He opined further that a contractor's accounting system should maintain audit trails during and after the processing of a transaction.

---

[2] A copy of the regulation is found at Doc. 223-2.

[3] A copy of the regulation is found at Doc. 231-5.

(*Id.*)  Brooks concluded that the Elliott Method failed to meet the regulatory requirements.  He stated as follows:

> [T]he Elliott Method is not adequate to demonstrate conclusively that any labor or vendor costs flowed into the billing system and were included in the claimed contract costs.  I encountered roadblocks at several of the steps outlined by Mr. Elliott.  Some of this inability to trace tooling costs from initiation of the transaction through billing to the Government resulted from differences between steps that could only be explained and reconciled using Lockheed's institutional knowledge.  Further, the Elliott Method does not provide the information necessary to comply with the regulatory, contract, and audit requirements of an acceptable and adequate accounting and billing system.

(*Id.*, Doc. 210-2 at 10.)  Relators conclude that Lockheed's discovery responses were incomplete because the processes and data provided do not satisfy the regulations.

Lockheed responds that Relators' arguments and the portions of Brooks' report cited above inappropriately conflate the Elliott Method with the requirements imposed by DCAA.  Relators requested Lockheed to identify and trace the costs of specific tools through to a public voucher submitted the Government.  Patrick McGeehin, Lockheed's purported expert, opined that Lockheed was not required by DCAA to identify tooling costs in the manner requested by Relators when it accumulated costs for billing to the Government.  (McGeehin Report, Doc. 233-2 at 9.)[4]  Instead, McGeehin testified at his deposition that Lockheed had to be able to trace a voucher backwards and "be able to show that the two or three systems that feed into that public voucher have integrity and that they can find the basis and the backup to the main cost areas that field [*sic*] into that."  (McGeehin Dep., Doc. 226-5 at 14.)  At the tool tracing hearing, Lockheed

---

[4] Additionally, McGeehin opined at his deposition that Lockheed was "[n]ot necessarily" required to "trace costs from a work authorizing document . . . into the claim for payment for those costs."  (McGeehin Dep., Doc. 226-5 at 14.)  McGeehin concluded, nonetheless, that such a tracing could be done from a public voucher back to the work authorizing document.  (*Id.*)

presented an excerpt from a DCAA report dated April 9, 1997 in which the resident auditor concluded that Lockheed "maintain[ed] an adequate billing system" and "submit[ted] its proposals in accordance with FAR 52.216-7, Allowable Cost and Payment contract clause." (1/28/11 Tr., Doc. 188 at 11.)

Brooks, Relators' purported expert, admitted that he had no knowledge of whether "DCAA ever wanted Lockheed to trace the cost of a specific tool" and no knowledge of whether DCAA disapproved or approved of the systems that Lockheed had in place. (Brooks Dep., Doc. 226-4 at 10.) Likewise, Brooks agreed during his deposition that the primary headings on a public voucher traced by DCAA would be "items of cost, . . . materials and labor" and "overhead, G&A, profit, [and] those kinds of things." (*Id.*)

At best, the Court is left with competing expert opinions as to the level of specificity required by Government regulations to support vouchers for payment. For purposes of this discovery motion, the Court cannot conclude that Lockheed is withholding DCAA-required documentation or systems for tracing tooling costs which would be responsive to the Interrogatories and the Rule 30(b)(6) Notice. The Court will not grant the Motion to Compel or impose discovery sanctions on the basis that the Government required Lockheed to maintain the information sought by Relators.

C.  **Relators Seek Discovery Sanctions Because Lockheed Admits Imperfections in the Tool-Tracing Method.**

Relators identify multiple imperfections or roadblocks in the Elliott Method and assert that those imperfections, individually or collectively, justify granting the Motion to Compel. For example, tool maintenance work record orders ("TMWRs") were written by tool inspectors to assign a maintenance task to tool mechanics or toolmakers and to track the labor time.

11

(1/28/2011 Tr., Doc. 188 at 81.) Lockheed concedes that the tooling costs associated with a TMWR cannot be traced one-to-one into the Attendance and Labor Recording ("A&LR") system data, despite the fact that the time charged on the TMWR was rolled into the A&LR data. (*Id.*, Doc. 188 at 81–86.) However, TMWRs provided the name of the tooling inspector and the date the maintenance work was checked. (*Id.*) Lockheed asserts that Relators could use the employee names and the dates to gather more information about the tooling maintenance work that was done. (*Id.*) Further, Lockheed emphasizes that "the work was done and it was charged through the A&LR data and it was ultimately charged to the United States." (*Id.*, Doc. 188 at 87.)

Lockheed also concedes that there can be difficulties or inconsistencies in tracing costs from the A&LR data to the Cost Accumulation for Multiple Purposes system ("CAMP") system. A&LR data is maintained on a weekly basis, but CAMP data is maintained on an annual basis. (1/28/2011 Tr., Doc. 188 at 94.) Additionally, A&LR data contains labor hours expended by in-house employees stated in hours, but CAMP reflects that labor cost in terms of dollars. Lockheed's expert testified that he could convert the A&LR hourly data into the CAMP monetary data by applying the appropriate blended labor rate. (McGeehin Dep., Doc. 226-5 at 17–19.)[5]

At the tool-tracing hearing, Relators pointed out instances where the weekly data in the A&LR system did not add up to match the annual data in the CAMP system such that more

---

[5] Rick Elliott of Lockheed testified at his Rule 30(b)(6) deposition that the data concerning the cost for specific tools lost its individual identity at the CAMP level and could not be found in the Lockheed billing system because of the way in which the data was rolled up into CAMP. (Elliott Dep., Doc. 209-3 at 63–65.)

12

hours were reflected in CAMP than had been in A&LR. (1/28/2011 Tr., Doc. 188 at 94–96.) Lockheed responded that any discrepancies could be explained by pool work order data which is maintained in microfiche at Lockheed. (*Id.*, Doc. 188 at 97–99.) The microfiche was made available to Relators. (*Id.*, Doc. 188 at 99, 101.)[6] Lockheed's counsel explained that although reliance on the microfiche might be necessary "to reconcile every single number to the penny," Lockheed would not dispute that any time charged reflected in CAMP ultimately was charged to the Government. (*Id.*, Doc. 188 at 103–04.) Lockheed's counsel summarized as follows:

> CAMP ultimately represents what was billed to the government that refers to that tool order. So if a part of the cost that's relevant to whatever you're trying to prove includes pool work order numbers, then you should use CAMP. If it does not include any allegations related to pool work orders, then I would suggest using the A&LR.

(*Id.*, Doc. 188 at 104.)[7]

Further, Lockheed agreed multiple times to enter into a stipulation that any costs reflected in CAMP were billed to the Government. At the tool-tracing hearing, the parties proposed the following stipulation:

> If costs or hours are recorded in Lockheed's A&LR, SHARP, or CAMP system tied to a billable work order, then such costs or hours were submitted to the

---

[6] Relators complain that Lockheed did not explain at the tool-tracing hearing how to utilize the pool work orders to achieve the reconciliation of A&LR data and CAMP data. (Doc. 231 at 4–5.) However, Relators acknowledged in correspondence prior to the tool-tracing hearing that Lockheed previously had provided this pool work order explanation. (Doc. 209-6 at 2–3.) Relators did not put Lockheed on notice prior to the hearing that they had questions regarding or objections to this explanation. (*Id.*)

[7] Relators identified other specific instances in which data in one database did not completely match the data in the next-step database, but Lockheed provided a reconciliation process which appeared to resolve the discrepancy. For example, Lockheed's counsel identified "pink data" which could be used to reconcile discrepancies between the SHARP and CAMP systems. (1/28/2011 Tr., Doc. 188 at 53–56.)

>  United States by Lockheed for payment and paid by the United States to
>  Lockheed. . . . Lockheed . . . will not assert that [R]elators must tie any such costs
>  or hours to specific claims for payment.

(*Id.*, Doc. 188 at 121.)  Lockheed's counsel stated at that time that he needed to verify the stipulation as to the A&LR and the Special Handling Accounting Receipts and Payment ("SHARP") systems.  (*Id.*, Doc. 188 at 122.)  He affirmed, however, that "if [costs] are in the CAMP system and they're tied to a billable work order, they definitely were submitted to the United States for payment" and that "Lockheed will not assert that [R]elators must tie any such costs or hours to specific claims for payment." (*Id.*)

After the hearing, Relators sought to expand the substantive scope of the stipulation beyond the language set forth immediately above, but Lockheed refused to agree to the expanded stipulation.  (Doc. 209-8; Doc. 209-9.)  On May 10, 2011, Lockheed's counsel affirmed in correspondence to Relators' counsel that "Lockheed . . . will agree to the tool tracing stipulation as originally communicated to the Court at the January 28, 2011 [tool-tracing hearing]."  (Doc. 238-1 at 3.)  Lockheed's position that all tooling charges entered into the CAMP system were presented to the Government for payment has not changed.  (Doc. 226 at 6, 11; Doc. 233-1 at 7.)  In fact, Lockheed's purported expert, Patrick McGeehin, testified in a deposition on September 22, 2011 that "Lockheed agreed to say any of these costs under the program that find its [*sic*] way into CAMP . . . they were billed and they were paid."  (McGeehin Dep., Doc. 226-5 at 16.)[8]

---

[8] Relators contend that they cannot determine from the Interrogatory responses, including application of the Elliott Method, how to determine on which specific claims the costs reflected in CAMP were charged.  Rather, the Elliott Method requires making an educated guess based on timing.  (Elliott Dep., Doc. 209-3 at 103–05; McGeehin Dep., Doc. 226-5 at 16.)  The fact that Lockheed will not challenge that the costs reflected in the CAMP system ultimately were charged to the Government obviates the concern raised by Relators' objection.

In another argument, Relators assert that Lockheed's discovery responses were inadequate because Lockheed did not explain how it segregated unallowable or unreasonable tooling charges arising from rework necessitated by vendor error. Relators state that all rework costs caused by vendor error were unreasonable. Therefore, Relators assert that rework costs caused by vendor error should not have been billed to the Government. (Doc. 231 at 15–16.)

Lockheed concedes that it had an obligation not to bill the Government for unallowable costs. (Doc. 233-1 at 2.) Lockheed also concedes that it did not have a system to track rework costs caused by vendor error. (1/28/2011 Tr., Doc. 188 at 115.)[9] Lockheed disputes, however, that all rework costs were unreasonable and unallowable. Lockheed's expert, McGeehin, opined that no Federal Acquisition Regulation required Lockheed to segregate tooling rework costs and that costs for rework were generally allowable. (McGeehin Rep., Doc. 233-2 at 15–16.) Therefore, in this instance, there is apparent agreement that Lockheed did not have, and cannot provide to Relators, a system to segregate rework costs caused by vendor error.

In sum, Relators contend that the Elliott Method is imperfect and cannot be used to trace the specific tooling costs to a specific voucher, and therefore, Lockheed's discovery requested based on the Elliott Method were insufficient. The Court disagrees. The Elliott Method is a way to analyze the data and processes contained within Lockheed's accounting system to provide traceability of tooling costs to the extent possible. The record indicates that the accounting systems themselves (not simply the Elliott method for utilizing those systems) cannot provide the one-to-one matching for tooling costs to a payment voucher in all circumstances. For

---

[9] Lockheed made a finding in the 1998 internal audit that "[c]ontrols have not been provided to ensure that the costs of rework are recorded so that, when appropriate, suppliers can be billed for additional costs." (Doc. 231-9 at 5.)

15

example, Lockheed concedes that the accounting systems do not provide the TMWR traceability which Relators seek. Relators have provided no basis to challenge that representation. However, a discovery response is not insufficient because it does not provide information which, in fact, does not exist. Further, in the circumstances of this case, the concession that the discovery responses are imperfect does not warrant the conclusion that the Motion to Compel must be granted and sanctions imposed.

**D.     The Court Will Not Impose Specific Sanctions Requested by Relators.**

The Court will not impose the discovery sanctions which Relators request. Lockheed will be prohibited from introducing evidence and arguments at summary judgment and/or at trial which are inconsistent with the substantive representations it has made to the Court and Relators regarding their billing systems and records for tracing costs. For example, pursuant to the parties' agreement, Relators will not be required to prove that costs in CAMP which can be tied to a billable work order also must be tied to a specific claim for payment.

However, Relators will have the burden at summary judgment and at trial to otherwise prove the merits of their claims and their entitlement to damages. The elements of Relators' claims, the merits of those claims, and the calculation of damages, if any, are not pending before the Court at this time. Nor have the parties adequately briefed these issues. The Court is disinclined in adjudicating this discovery motion to make a final determination regarding the elements of Relators' False Claims Act claims and whether Relators can satisfy those elements.

For instance, Relators seek as a discovery sanction an order that "Relators do not need to identify or segregate out specific tool rework costs from other tool order costs in order to recover on their claims in this case because Lockheed did not segregate such costs (and Lockheed is

16

barred from presenting evidence or argument that Relators must do so)[.]" (Doc. 231 at 19.) Lockheed has conceded that it did not segregate costs for rework generated by vendor error. Relators, presumably, will have the burden to prove in the first instance that vendor error related to a specific tool generated rework costs. The Court is loathe at this juncture to otherwise define or limit the elements of proof necessary to establish Relators' claims.

For another example, Relators contend that they should be permitted to use the 203 and PARS-2 property accounting systems to estimate damages because the Elliott Method is not sufficient to allow Relators to trace particular tooling costs to a particular Government voucher. *Cf. Digital Filing Sys., L.L.C. v. Aditya Int'l*, 323 F. App'x 407, 418–19 (6th Cir. 2009) (stating that inferences can be taken against the defendant, and doubts resolved in favor of the plaintiff, when damages cannot be calculated with precision based on the discovery produced by the defendant). However, the parties have not at this time presented the Court with evidence and arguments concerning Lockheed's liability or Relators' entitlement to damages. The Court will not speculate at this juncture whether Relators will be able to establish damages with sufficient particularity.

In sum, the Court denies the Motion to Compel insofar as Relators seek a remedy compelling Lockheed to provide more complete responses to the Interrogatories and to continue the Rule 30(b)(6) Notice deposition. The Court also denies the Motion to Compel to insofar as Relators seek the Court to define or limit the elements needed to establish Lockheed's liability or the potential damages award. However, the Court grants the Motion to Compel to the extent that Lockheed must produce or identify by Bates-number the FTPAs and the invoices associated with the purchase orders specified above. Also, the Court will hold Lockheed to its agreement with

17

the stipulation proposed at the tool-tracing hearing.

### III. CONCLUSION

For the reasons set forth above, Lockheed's Motion for Leave to File Sur-Reply (doc. 233) is **GRANTED**, the Sur-Reply is deemed to have been filed at docket number 233-1, and Relators' Motion to Compel (doc. 209) is **GRANTED IN PART AND DENIED IN PART** as set forth above.

IT IS SO ORDERED.

                                                                                              s/Susan J. Dlott  
                                                                           Chief Judge Susan J. Dlott  
                                                                           United States District Court